IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RACHEL CHAVEZ,

    Plaintiff,

v.                                                        Civ. No. 01-1086 RLP/WWD

CITY OF ALBUQUERQUE, *et al.*,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the court on certain defendants' Motion for Summary Judgment. Specifically, defendants City of Albuquerque, as operator of Bernalillo County Detention Center ("BCDC"), and Sam Garcia, Corrections Officer, in his individual and official capacities (collectively, "the BCDC Defendants"),[1] request that Ms. Chavez's claims against them be dismissed.[2] Ms. Chavez claims her constitutional rights were violated by the BCDC Defendants and brings her claims pursuant to 42 U.S.C. §§ 1983 (deprivation of civil rights), 1985(3) (conspiracy to interfere with civil rights); and 28 U.S.C. § 1367(a) (supplemental jurisdiction over state law claims).

### Standard for Summary Judgment

---

[1] Ms. Chavez also has sued "The Albuquerque City-County Detention Center," which the BCDC Defendants argue is not a proper party because there is no such entity. In her Response, Ms. Chavez agrees there is no such entity.

[2] On May 6, 2002, Plaintiff Rachel Chavez filed her First Amended Complaint [Doc. 26] naming the following as defendants: The City of Albuquerque, the Albuquerque Police Department, Officer Steve Lopez and Sam Garcia, Corrections Officer. The two individuals are sued in their official and individual capacities. One law firm represents the City of Albuquerque as operator of BCDC and Mr. Garcia; the City of Albuquerque (as "operator" of Albuquerque Police Department) and Officer Lopez are represented by City attorneys. This Memorandum Opinion and Order only concerns the claims against the City as operator of BCDC and Mr. Garcia.

Summary judgment is appropriate only when there are no disputed issues of material, *i.e.*, outcome determinative, facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-27 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-52 (1986). In reviewing a summary judgment motion, the court is to view the record "in the light most favorable to the nonmoving party." *Thournir v. Meyer*, 909 F.2d 408, 409 (10th Cir. 1990). The purpose of a summary judgment motion is to determine whether there is evidence to support a party's factual claims. Unsupported conclusory allegations thus do not create a genuine issue of fact. *United States v. Simons*, 129 F.3d 1386, 1388-89 (10th Cir. 1997) (citing *Allen v. Muskogee, Okla.*, 119 F.3d 837, 843-44 (10th Cir. 1997), *cert. denied*, 522 U.S. 1148 (1998)).

<u>Factual Background</u>

Ms. Chavez was arrested by defendant Officer Lopez after a security guard at Midnite Rodeo called the police because Ms. Chavez had allegedly assaulted a patron. Ms. Chavez was unruly and vocal about her arrest. Officer Lopez took her to BCDC. The following account is taken from Ms. Chavez's Response to BCDC Defendants' Motion for Summary Judgment [Doc. 38]:

> Officer Lopez then takes her into the BCDC booking area and with help from jail personnel he handcuffs her to a door handle in violation of BCDC policy and procedure. [Record citations omitted.]

Response to Motion for Summary Judgment [Doc. 38] at 2.

The videotape submitted by Ms. Chavez, Exhibit 3 to her Response, indicates that

she was in constant motion upon entering the booking area. She was handcuffed to a doorknob by Officer Lopez. She remained in constant motion. The videotape shows various unknown individuals approaching her during the approximately five or so minutes she was in the area. No one struck her. She was released from the doorknob and taken to another area. Exhibit 3 to Plaintiff's Response.

## Discussion

Ms. Chavez's contends that her rights under the Fourth, Eighth, and Fourteenth Amendments were violated by the events described above, *i.e.*, being handcuffed to a doorknob. As against the BCDC Defendants, she claims a conspiracy is shown by the BCDC officer handing handcuffs to Officer Lopez. Response at 5, ¶ 16. She alleges that her Eighth Amendment rights were violated because being handcuffed to a doorknob meant she "was treated differently than [*sic*] others similarly situated and therefore her equal protection rights were violated." Response at 8. She states that Defendant Garcia is being sued because he was on duty that night. *Id.* at ¶ 13. The opinion will first discuss the claims against Defendant Garcia in his individual capacity.

In response to the claims against him in his individual capacity, Mr. Garcia has raised the affirmative defense of qualified immunity. Thus, Ms. Chavez must "show that the law was clearly established when the alleged violation occurred and come forward with facts or allegations sufficient to show that the official violated the clearly established law." *Pride v. Does*, 997 F.2d 712, 716 (10th Cir. 1993) (quoting *Woodward v. City of Worland*, 977 F.2d 1392, 1396 (10th Cir. 1992), *cert. denied*, 509 U.S. 923 (1993)). "In so doing, the plaintiff must offer more than conclusory and nonspecific allegations in order to

overcome a motion for summary judgment based on qualified immunity." *Pride*, 997 F.2d at 715.

The first question to resolve is whether Ms. Chavez was an arrestee or a pretrial detainee. If the former, her excessive force claims are analyzed under the Fourth Amendment; if the latter, the Fourteenth Amendment provides the constitutional framework. In *Graham v. Connor*, 490 U.S. 386 (1989), the Court held that all excessive force claims, which occur "in the making of an arrest, an investigatory stop, or other 'seizure' of a person . . . are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard, rather than under a substantive due process standard." *Id.* at 387. The plaintiff in *Graham* brought a § 1983 action, alleging excessive force during course of investigatory stop. In the opinion, the Court noted that

> [o]ur cases have not resolved the question whether the Fourth Amendment continues to provide individuals with protection against the deliberate use of excessive physical force beyond the point at which arrest ends and pretrial detention begins, and we do not attempt to answer that question today

*Id.* at 395 n.10.

In 1991, the Tenth Circuit Court of Appeals held that claims of post-arrest excessive force by arrestees, who are detained without a warrant, are governed by the "objective reasonableness" standard of the Fourth Amendment. *Austin v. Hamilton*, 945 F.2d 1155, 1160 (10th Cir. 1991), *abrogated on other grounds*, *Johnson v. Jones*, 515 U.S. 304 (1995). In 1992, the Tenth Circuit reaffirmed *Austin* and stated that the "objective reasonableness" standard of the Fourth Amendment applies to arrestees "until they are brought before a judicial officer for a determination of probable cause to arrest."

4

*Frohmader v. Wayne*, 958 F.2d 1024, 1026 (10th Cir. 1992). *See also Butler v. City of Norman*, 992 F.2d 1053, 1054 (10th Cir. 1993) ( "[i]t has been held that the presence of an arrestee in jail and the completion of the booking process marks the line between 'arrest' and 'detention.'").

In this case, Ms. Chavez's claims arise prior to the completion of the booking process. Based on the foregoing authorities, her claims are analyzed as an arrestee under the Fourth Amendment and the *Graham* "objective reasonableness" inquiry prevails.

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," . . . violates the Fourth Amendment.

*Graham*, 490 U.S. at 396 (citations omitted).

The Court further cautioned that the officer's state of mind was irrelevant: "An officer's evil intention will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional. *Id*. at 397.

In this opinion we examine only the claims against BCDC and Mr. Garcia, the on-duty supervisor. Ms. Chavez contends that when BCDC personnel gave the handcuffs to the arresting officer and then assisted the officer in handcuffing Ms. Chavez to a doorknob, those acts created a conspiracy to deprive her of equal protection under the law, as prohibited by 42 U.S.C. § 1985(3) and/or the Eighth Amendment.

5

To state a claim under § 1985(3), a plaintiff must allege the existence of a conspiracy intended to deprive an individual or class of persons of protected rights based on "some racial, or perhaps otherwise class-based, or invidiously discriminatory animus[.]" *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). However, even a "class of one" may have a remedy for denial of equal protection under the laws in violation of the Eighth Amendment. *Willowbrook v. Olech*, 528 U.S. 562 (2000) (per curium). To prevail as a class of one, a plaintiff must allege that "she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* at 564. Based on Ms. Chavez's allegations it is difficult to tell whether she is bringing her claim pursuant to § 1985(3), which requires racial discrimination, or under the Equal Protection clause of the Eighth Amendment. Regardless, either claim fails.

Ms. Chavez has submitted no probative evidence to indicate that any treatment she received was motivated by racially discriminatory animus or that similarly situated arrestees were treated differently. "Similarly situated" arrestees would be those individuals who do not remain still while the officer is attempting to complete his paperwork. With the assistance of BCDC personnel, Ms. Chavez was handcuffed to a doorknob for four minutes. Even though the use of the doorknob was against BCDC policy, this claim does not rise to a constitutional magnitude. Because there is no evidence of either racial animus or different treatment without rational basis, the evidence to support a conspiracy claim is similarly deficient. Accordingly, Defendant Garcia is entitled to summary judgment for the claims against him in his individual capacity.

As to the claims against the City of Albuquerque, as the owner/operator of BCDC, a § 1983 plaintiff must allege that a government official acting pursuant to a municipal policy or custom deprived him of his constitutional rights. *Monnell v. New York City Dep't of Social Services*, 436 U.S. 658, 690 (1978). Moreover, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monnell*, unless proof of the incident includes proof that it was caused by an exisiting unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985). Ms. Chavez has submitted no factual evidence to support a claim against the City of Albuquerque as the owner of BCDC. Accordingly, the City is entitled to summary judgment to the claims against it in that capacity.

As to the claims against Defendant Garcia in his official capacity, personal participation is an essential allegation in a § 1983 action. *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976). Defendants may not be sued in a § 1983 action on a theory of respondeat superior. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986); *Gagan v. Norton*, 35 F.3d 1473, 1476 n.4 (10th Cir. 1994), *cert. denied*, 533 U.S. 916 (2001). A defendant may not be held liable in a civil rights action merely because of his supervisory position. *Id.*; *McKee v. Heggy*, 703 F.2d 479, 483 (10th Cir. 1983).

> Instead, to establish supervisory liability, a plaintiff must show that "an affirmative link exists between the [constitutional] deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise."

*Worrell v. Henry*, 219 F.3d 1197, 1214 (10th Cir. 2000) (quoting *Meade v. Grubbs*, 841 F.2d 1512, 1527 (10th Cir. 1988)), *cert. denied*, 533 U.S. 916 (2001) (brackets in original).

7

Ms. Chavez has failed to come forward with any factual evidence to support a claim against Defendant Garcia in his official capacity. Accordingly, he is entitled to summary judgment as to those claims.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that the BCDC Defendants' Motion for Summary Judgment [Doc. 34] is granted.

IT IS SO ORDERED.

_____
Richard L. Puglisi
United States Magistrate Judge
(sitting by designation)

FOR THE PLAINTIFF:

    Juan Montoya, Esq.

FOR THE DEFENDANTS City of Albuquerque as operator of BCDC
and Sam Garcia, in his official and individual capacities:

    Patrick D. Allen, Esq.